# 19-3970

IN THE

# United States Court of Appeals

**FOR THE SECOND CIRCUIT**

CHARLOTTE FREEMAN, FOR THE ESTATE OF BRIAN S. FREEMAN, KATHLEEN SNYDER, RANDOLPH FREEMAN, G.F., A MINOR, I.F., A MINOR, DANNY CHISM, LINDA FALTER, RUSSELL FALTER, FOR THE ESTATE OF SHAWN O. FALTER, SHANNON MILLICAN, FOR THE ESTATE OF JOHNATHON M. MILLICAN, MITCHELL MILLICAN, BILLY WALLACE, STEFANIE WALLACE, D.W., A MINOR, C.W, A.W., A MINOR, TRACIE ARSIAGA, CEDRIC HUNT, SR., ROBERT BARTLETT,

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
No. 14-CV-6601 (PKC) (CLP)

## BRIEF OF LAW PROFESSORS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS

Stephen I. Vladeck
727 East Dean Keeton Street
Austin, TX 78705
(512) 475-9198
svladeck@law.utexas.edu

*Attorney for* Amici Curiae

March 16, 2020

SHAWN BARTLETT, LISA RAMACI, ISABELL VINCENT, CHARLES VINCENT, GWENDOLYN MORIN-MARENTES, FOR THE ESTATE OF STEVE MORIN, JR., E.M., A MINOR, AUDREY MORIN, STEVE MORIN, AMY LYNN ROBINSON, FLOYD BURTON ROBINSON, FOR THE ESTATE OF JEREMIAH ROBINSON, DEBORAH NOBLE, FOR THE ESTATE OF CHARLES E. MATHENY, IV, CHARLES E. MATHENY, III, SILVER FARR, PATRICK FARR, FOR THE ESTATE OF CLAY P. FARR, RAYANNE HUNTER, W.H., A MINOR, T.H., A MINOR, FABERSHA FLYNT LEWIS, LORENZO SANDOVAL, SR., FOR THE ESTATE OF ISRAEL DEVORA-GARCIA, LORENZO SANDOVAL, JR., H. JOSEPH BANDHOLD, DONALD C. BANDHOLD, NANETTE SAENZ, FOR THE ESTATE OF CARLOS N. SAENZ, JUAN SAENZ, JOHN VACHO, FOR THE ESTATE OF CAROL VACHO, FOR THE ESTATE OF NATHAN J. VACHO, ASHLEY VACHO, JEANETTE WEST, FOR THE ESTATE OF ROBERT H. WEST, SHELBY WEST, DONNA ENGEMAN, SUZZETTEE LAWSON, FOR THE ESTATE OF ISAAC S. LAWSON, C.L., A MINOR, JUDY ANN CRABTREE, RONALD WAYNE CRABTREE, DEBRA WIGBELS, RONALD WILLIAM CRABTREE, JUDY HUENINK, SEAN SLAVEN, CHASTITY DAWN SLAVEN, NICOLE LANDON, MISTI FISHER, FRED FRIGO, LYNN FOREHAND, LANCE HAUPT, RHONDA HAUPT, TIFANY HAUPT, SABRINA CUMBE, DAVID W. HAINES, DAWN HAINES, C.H., A MINOR, SANGSOON KIM, MICHELLE KIM, SEOP STEVE KIM, FOR THE ESTATE OF JANG H. KIM, HELEN FRASER, RICHARD FRASER, FOR THE ESTATE OF DAVID M. FRASER, TRICIA ENGLISH, N.W.E., A MINOR, N.C.E., A MINOR, A.S.E., A MINOR, TODD DAILY, FOR THE ESTATE OF SHAWN L. ENGLISH, PHILIP S. FORD, LINDA GIBSON, JOHN GIBSON, DENISE BLOHM, JEREMY BLOHM, JOANNE GUTCHER, TRACY ANDERSON, JEFFREY ANDERSON, ANASTASIA FULLER, A.F., A MINOR, ANNE F. HARRIS, PAUL D. HARRIS, HYUNJUNG GLAWSON, YOLANDA M. BROOKS, CURTIS GLAWSON, SR., RYAN SABINISH, ANN CHRISTOPHER, FOR THE ESTATE OF KWESI CHRISTOPHER, D.J.F., A MINOR, AVA TOMSON, FOR THE ESTATE OF LUCAS V. STARCEVICH, RICHARD TOMSON, BRADLEY STARCEVICH, GLENDA STARCEVICH, ARIANA REYES, TRENTON STARCEVICH, KAREN FUNCHEON, FOR THE ESTATE OF ALEXANDER J. FUNCHEON, ROBERT FUNCHEON, HOLLY BURSON-GILPIN, FOR THE ESTATE OF JEROME POTTER, NANCY UMBRELL, MARK UMBRELL, NANCY AND MARK UMBRELL FOR THE ESTATE OF COLBY J. UMBRELL, ILENE DIXON, SHELLEY ANN SMITH, WILLIAM FARRAR, SR., FOR THE ESTATE OF WILLIAM A. FARRAR, TONYA K. DRESSLER, ARDITH CECIL DRESSLER, MELISSA DRESSLER, ELIZABETH BROWN, FOR THE ESTATE OF JOSHUA D. BROWN, MARIAN BROWN, WAYNE BROWN, DANIELLE SWEET, FOR THE ESTATE OF RYAN A. BALMER, A.B., A MINOR, G.B., A MINOR, DONNA KUGLICS, FOR THE ESTATE OF MATTHEW J. KUGLICS, LES KUGLICS, EMILY KUGLICS, SYLVIA JOHNSON SPENCER, RAYMOND NIGEL SPENCER, SR., JOHN D. LAMIE, PAULA C. BOBB-MILES, FOR THE ESTATE OF BRANDON K. BOBB, JOHNNY JAVIER MILES, SR., J.J.M., JR., A MINOR, RACQUEL ARNAE BOBB MILES, URSULA ANN JOSHUA, BRITTANY MARIONIQUE JOSHUA, ASHLEY GUDRIDGE, MARION CRIMENS, TIMOTHY W. ELLEDGE, CHRISTOPHER LEVI, BRENDA HABSIEGER, MICHAEL HABSIEGER, JACOB MICHAEL HABSIEGER, KELLI D. HAKE, FOR THE ESTATE OF CHRISTOPHER M. HAKE, DENICE YORK, RUSSEL YORK, JILL HAKE, PETER HAKE, G.H., A MINOR, MARIA E. CALLE, KIM MILLER, WALTER BAILEY, CASSANDRA BAILEY, KACEY GILMORE, TERRELL GILMORE, JR., MICHELLE KLEMENSBERG, FOR THE ESTATE OF LARRY R. BOWMAN, HARRY PICKETT, E.C.R., A MINOR, RACHEL M. GILLETTE, KOUSAY

AL-TAIE, FOR THE ESTATE OF AHMED AL-TAIE, ADAM G. STOUT, REBEKAH A. COLDEWE, SCOTT HOOD, PATRICIA SMITH, KATHY STILLWELL, FOR THE ESTATE OF DANIEL CRABTREE, MICHAEL SMITH, CHAD FARR, JACQUELINE A. SMITH, R.J.S., A MINOR, DAVID HARTLEY, FOR THE ESTATE OF JEFFREY HARTLEY, LINDA PRITCHETT, ALLEN SWINTON, DANIEL FRITZ, TEMIKA SWINTON, MARLYNN GONZALES, T.S., A MINOR, JULIE CHISM, T.B., A MINOR, KARI CAROSELLA, MARY JANE VANDEGRIFT, WILLIAM PARKER, SCOTT LILLEY, PAM MARION, KYSHIA SUTTON, DONNIE MARION, JASON SACKETT, PAULA MENKE, ROBERT CANINE, DANIEL MENKE, S.J.S., A MINOR, MATTHEW MENKE, ADAM WOOD, NICHOLE LOHRING, ROSEMARIE ALFONSO, ANNA KARCHER, K.B., A MINOR, ANASTASIA FULLER, FOR THE ESTATE OF ALEXANDER H. FULLER, MICHELLE BENAVIDEZ, FOR THE ESTATE OF KENNITH W. MAYNE, DAN DIXON, FOR THE ESTATE OF ILENE DIXON, DANIEL BENAVIDEZ, SR., DAN DIXON, FOR THE ESTATE OF ROBERT J. DIXON, CHRISTINA BIEDERMAN, CYNTHIA DELGADO, DANIEL BENAVIDEZ, JR., KYNESHA DHANOOLAL, JENNIFER MORMAN, MERLESE PICKETT, CHRISTOPHER MILLER, JOHN VANDEGRIFT, ANGIE JACKSON, MEGAN MARIE RICE, TRINA JACKSON, NANCY FUENTES, FOR THE ESTATE OF DANIEL A. FUENTES, S.J., A MINOR, NOALA FRITZ FOR THE ESTATE OF LYLE FRITZ, GREGORY BAUER, NOALA FRITZ, THERESA DAVIS, TIFFANY M. LITTLE, LINDA DAVID, FOR THE ESTATE OF TIMOTHY A. DAVID, MICHELLE KLEMENSBERG, MICHAEL DAVID, KOUSAY AL-TAIE, DONNA LEWIS, TIMOTHY KARCHER, KENNETH J. DREVNICK, ELIZABETH CHISM, FOR THE ESTATE OF JONATHAN B. CHISM, TONYA LOTTO, TABITHA MCCOY, FOR THE ESTATE OF STEVE A. MCCOY, JERRY L. MYERS, KATHY STILLWELL, THERESA HART, ROBERTO ANDRADE, SR., WAYNE NEWBY, ROBI ANN GALINDO, VERONICA HICKMAN, RYANNE HUNTER, FOR THE ESTATE OF WESLEY HUNTER, DAVID EUGENE HICKMAN, DEBRA LEVI, DEVON FLETCHER HICKMAN, CORTEZ GLAWSON, REBECCA J. OLIVER, LINDA JONES, J.L., A MINOR, ARMANDO FUENTES, WOOD MEGAN, SEAN ELLIOTT, GILBERT ARSIAGA, JR., EDNA LUZ BURGOS, ADRIAN MCCANN, ERIK ROBERTS, FRANK LILLEY, N.T., A MINOR, HARRY RILEY BOCK, COLIN ROBERTS, JILL ANN BOCK, ROBIN ROBERTS, BRETT COKE, CHASTITY DAWN LAFLIN, M.C., A MINOR, T.M., A MINOR, MEGHAN PARKER-CROCKETT, KERI COTTON, JANET JONES, JULIO FUENTES, WESLEY WILLIAMSON, DANIEL C. OLIVER, J.L., A MINOR, TRAVIS GIBSON, DEBBIE BEAVERS, GEORGE J. WHITE, ERIC LEVI, JOHNNY WASHBURN, DAN DIXON, DAKOTA SMITH-LIZOTTE, R.N.R., A MINOR, GEORGE ARSIAGA, JOHN MCCULLY, HATHAL K. TAIE, JAMES SMITH, C.F., A MINOR, ANTHONY ALDERETE, AMANDA B. ADAIR, MICHAEL J. MILLER, NICHOLAS BAUMHOER, STEVE MORIN, SR., KIMBERLEY VESEY, ZACHARY HAKE, CASSIE COLLINS, GEORGE D. WHITE, CARA ROBERTS, M.T., A MINOR, STEPHANIE MCCULLY, T.F., A MINOR, TERREL CHARLES BARTLETT, CORY SMITH, A.B., A MINOR, EVAN KIRBY, JUDY HUENINK, FOR THE ESTATE OF BENJAMIN J. SLAVEN, CARROL ALDERETE, B.D., A MINOR, NANCY FUENTES, JOHN VANDEGRIFT, FOR THE ESTATE OF MATTHEW R. VANDEGRIFT, D.J.F., A MINOR, CYNTHIA DELGADO, FOR THE ESTATE OF GEORGE DELGADO, MACKENZIE HAINES, NATALIA WHITE, CYNTHIA THORNSBERRY, K.W., A MINOR, MEGAN MARIE RICE, FOR THE ESTATE OF ZACHARY T. MYERS, R.M., A MINOR, STEPHANIE GIBSON WEBSTER, CHRISTINA SMITH, DEBBIE SMITH, JEFFREY D. PRICE, CASSIE SMITH, HARRY CROMITY, JAMES CRAIG ROBERTS, MARVIN THORNSBERRY, L.T., A

MINOR, SKYLAR HAKE, VIVIAN PICKETT, ANDREW TOMSON, FLORA HOOD, PATRICIA MONTGOMERY, PATRICIA ARSIAGA, FOR THE ESTATE OF JEREMY ARSIAGA, DON JASON STONE, MATTHEW ARSIAGA, ALESIA KARCHER, LAWRENCE KRUGER, AUDREY KARCHER, THOMAS SMITH, SHAYLYN C. REECE, ANDREW LUCAS, JOHN SACKETT, SHAULA SHAFFER, NOALA FRITZ, FOR THE ESTATE OF JACOB FRITZ, SHYANNE SMITH-LIZOTTE, MEGAN PEOPLE, NATHAN NEWBY, R.M., A MINOR, TONY GONZALES, KATHERINE MCRILL-FELLINI, VICTORIA DENISSE ANDRADE, KRISTY KRUGER, JOEDI WOOD, AUSTIN WALLACE, TAMMY VANDERWAAL, ANGELICA ANDRADE, BRIAN NEUMAN, ESTHER WOLFER, SAMANTHA TOMSON, MATTHEW LILLEY, BRYAN MONTGOMERY, ANGEL MUNOZ, KEMELY PICKETT, MARIAH SIMONEAUX, JAMES CANINE, VANESSA CHISM, A.K., A MINOR, RAYMOND MONTGOMERY, DONNA ENGEMAN, FOR THE ESTATE OF JOHN W. ENGEMAN, CAROL KRUGER, NAWAL AL-TAIE, MEGAN SMITH, LEONARD WOLFER, TIM LUCAS, DAVID NOBLE, MARSHA NOVAK, EMILY LEVI, TONY WOOD, E.C.R., A MINOR, DONNA LEWIS, FOR THE ESTATE OF JASON DALE LEWIS, KIERRA GLAWSON, ETHAN FRITZ, STEPHANIE HOWARD, RUSSELL C. FALTER, KYNESHA DHANOOLAL, FOR THE ESTATE OF DAYNE D. DHANOOLAL, DOUGLAS KRUGER, L.M., A MINOR, BRIAN COKE, PRESTON SHANE REECE, JEAN MARIANO, A.L.R., A MINOR, CASSIE COLLINS, FOR THE ESTATE OF SHANNON M. SMITH, G.L., A MINOR, ERIKA NEUMAN, MICHAEL LUCAS, CALVIN CANINE, DIXIE FLAGG, BASHAR AL-TAIE, MARJORIE FALTER, JOLENE LILLEY, VICTORIA PENA ANDRADE, TIFFANY M. LITTLE, FOR THE ESTATE OF KYLE A. LITTLE, ELIZABETH CHISM, TAMARA RUNZEL, K.L., A MINOR, MARLEN PICKETT, TABITHA MCCOY, SHILYN JACKSON, KIMBERLEE AUSTIN-OLIVER, SYLVIA MACIAS, MERLESE PICKETT, FOR THE ESTATE OF EMMANUEL PICKETT, DAVID LUCAS,

*Plaintiffs-Appellants,*

—against—

HSBC HOLDINGS PLC, (HSBC), HSBC BANK PLC, (HSBC-EUROPE), HSBC BANK MIDDLE EAST LIMITED, (HSBC MIDDLE EAST), HSBC BANK USA, N.A., (HSBC-US), BARCLAYS BANK PLC, STANDARD CHARTERED BANK, ROYAL BANK OF SCOTLAND, N.V., CREDIT SUISSE, BANK SADERAT PLC, JOHN DOES, 1-50, COMMERZBANK AG,

*Defendants-Appellees.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTEREST OF *AMICI CURIAE* ........ 1

SUMMARY OF ARGUMENT ........ 2

ARGUMENT ........ 4

I. JASTA EXPRESSLY PROVIDES THAT ATA CLAIMS CAN BE PREDICATED ON THEORIES OF SECONDARY LIABILITY ........ 4

A. As Initially Enacted, the ATA Did Not Expressly Provide for Secondary Liability ........ 4

B. JASTA Expressly Provided That Secondary Liability is Available Under the ATA, and Expressly Articulated the Standards Governing Such Claims ........ 10

II. LOWER COURTS HAVE RESPONDED TO JASTA BY IMPOSING INDEFENSIBLY HIGH BURDENS ON PLAINTIFFS TO ALLEGE SECONDARY LIABILITY CLAIMS UNDER THE ATA ........ 14

A. Courts Have Required Plaintiffs Raising Civil Conspiracy Claims Under the ATA to Allege Far More Than *Halberstam* Requires ........ 14

B. Courts Have Required Plaintiffs Raising Aiding-and-Abetting Claims Under the ATA to Allege Far More Than *Halberstam* Requires ........ 18

C. These Narrow Interpretations of JASTA Cannot Be Reconciled with Its Plain Text or Congress's Unambiguous Purpose ........ 21

III. THE DISTRICT COURT'S ANALYSIS OF SECONDARY LIABILITY UNDER THE ATA SHOULD BE VACATED AND REMANDED ........ 24

CONCLUSION ........ 30

APPENDIX ........ 1a

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### Cases

*Almog* v. *Arab Bank, PLC*, 471 F. Supp. 2d 257 (E.D.N.Y. 2007) ............ 5

*Bank Markazi* v. *Peterson*, 136 S. Ct. 1310 (2016) .................................. 23

*BCS Servs., Inc.* v. *Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011) .. 19

*BedRoc Ltd., LLC* v. *United States*, 541 U.S. 176 (2004) ....................... 23

*Boim* v. *Holy Land Found. for Relief & Dev.* ("*Boim III*"),
549 F.3d 685 (7th Cir. 2008) (en banc) ...................................... 8, 10, 21

*Cent. Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) .......................................................................... 8

*Eldred* v. *Ashcroft*, 537 U.S. 186 (2003) .................................................. 29

*Food Mktg. Inst.* v. *Argus Leader Media*, 139 S. Ct. 2356 (2019) ..... 23, 24

*Freeman* v. *HSBC Holdings PLC*,
No. 14 CV 6601, 2018 WL 3616845 (E.D.N.Y. July 27, 2018) ............. 17
413 F. Supp. 3d 67 (E.D.N.Y. 2019) ........................................... 3, 17, 22

*Halberstam* v. *Welch*, 705 F.2d 472 (D.C. Cir. 1983) ...................... *passim*

*Harbison* v. *Bell*, 556 U.S. 180 (2009) ....................................................... 29

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
405 F. Supp. 3d 525 (S.D.N.Y. 2019) ....................................... 24, 25, 27

*Kemper* v. *Deutsche Bank AG*, 911 F.3d 383 (7th Cir. 2018) .................. 16

*Kloeckner* v. *Solis*, 568 U.S. 41 (2012) ..................................................... 22

*Linde* v. *Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018) .......................... 19

*Nat'l Ass'n of Mfrs.* v. *Dep't of Defense*, 138 S. Ct. 617 (2018) ............ 4, 23

*O'Sullivan* v. *Deutsche Bank AG*,
No. 17 CV 8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ...... 14, 16
No. 17 CV 8709, 2020 WL 906153 (S.D.N.Y. Feb. 25, 2020) ........... 1, 18

*RJR Nabisco* v. *European Cmty.*, 136 S. Ct. 2090 (2016) ....................... 29

*Ross* v. *Blake*, 136 S. Ct. 1850 (2016) ....................................................... 23

*Rothstein* v. *UBS AG*, 708 F.3d 82 (2d Cir. 2013) .......................... 8, 9, 10

**TABLE OF AUTHORITIES (CONTINUED)**

*Schindler Elev. Corp.* v. *United States ex rel. Kirk*,
563 U.S. 401 (2011) .......... 23

*Siegel* v. *HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019).. 2, 19

*Taamneh* v. *Twitter, Inc.*, 343 F. Supp. 3d 904 (N.D. Cal. 2018) .......... 16

*Wultz* v. *Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010)........ 8

**Statutes**

Anti-Terrorism Act (ATA), 18 U.S.C. .......... *passim*
§ 2331 .......... 14
§ 2331(1)(A) .......... 6
§ 2331(1)(B) .......... 6, 7
§ 2331(1)(C) .......... 7, 29
§ 2333 .......... 11, 14
§ 2333(a) .......... 6, 8, 12, 16
§ 2333(d) .......... 1, 2, 12
§ 2334 .......... 14
§ 2335 .......... 13
§ 2337 .......... 7

Anti-Terrorism Clarification Act of 2018,
Pub. L. No. 115-253, 132 Stat. 3183 .......... 13

Federal Courts Administration Act of 1992,
Pub. L. No. 102-572, 106 Stat. 4506 .......... 5

Justice Against Sponsors of Terrorism Act (JASTA),
Pub. L. No. 114-222, 130 Stat. 852 (2016) .......... *passim*

Military Construction Appropriations Act, 1991,
Pub. L. No. 101-519, 104 Stat. 2240 (1990) .......... 4

National Defense Authorization Act for Fiscal Year 2013,
Pub. L. No. 112-239, 126 Stat. 1632 .......... 13

USA PATRIOT Act of 2001,
Pub. L. No. 107-56, 115 Stat. 272 .......... 7

**TABLE OF AUTHORITIES (CONTINUED)**

## Other Authorities

STEPHEN DYCUS ET AL., COUNTERTERRORISM LAW (3d ed. 2016) ............... 9

H.R. Rep. No. 102-1040 (1992) ................................................................ 5, 7

S. Rep. No. 102-342 (1992) .................................................................... 5, 7

Steve Vladeck,
*The 9/11 Civil Litigation and the Justice Against Sponsors of Terrorism Act (JASTA)*, JUST SECURITY, Apr. 18, 2016, https://www.justsecurity.org/30633/911-civil-litigation-justice-sponsors-terrorism-act-jasta/ .................... 11

Veto Message from the President — S. 2040, Sept. 23, 2016, https://obamawhitehouse.archives.gov/the-press-office/2016/09/23/veto-message-president-s2040 ............................................................ 11

* * *

## Interest of *Amici Curiae*[1]

*Amici curiae* listed in the Appendix are 18 law professors who write about, research, and teach civil procedure, counterterrorism law, federal courts, and/or statutory interpretation. *Amici* come together in this case in response to a trend among lower-court rulings dismissing claims for secondary liability under the Anti-Terrorism Act (ATA), 18 U.S.C. § 2333, as amended by the Justice Against Sponsors of Terrorism Act (JASTA), Pub. L. No. 114-222, § 4(a), 130 Stat. 852, 854 (2016) (codified at 18 U.S.C. § 2333(d)). As *amici* explain in this brief (and in a similar brief filed in *Reuvane* v. *Lebanese Canadian Bank*, No. 19-3522), lower courts, including the district court here, have limited secondary liability under the ATA in a manner that cannot be reconciled with either JASTA's plain text or Congress's unambiguous purpose in enacting that statute.

---

1. All parties participating in this appeal have consented to the filing of this brief. In accordance with Second Circuit Local Rule 29.1(b), no counsel for a party to this appeal authored this brief in whole or in part, and no counsel for a party (nor a party itself) made a monetary contribution intended to fund the preparation or submission of this brief. Counsel to *amici* has consulted for counsel to the plaintiffs in *O'Sullivan* v. *Deutsche Bank AG*, No. 17 CV 8709, 2020 WL 906153 (S.D.N.Y. Feb. 25, 2020). Some of the costs of preparing and submitting this brief were paid by those counsel, but none of the *amici* have received any compensation for joining this brief.

## SUMMARY OF ARGUMENT

Congress enacted JASTA "to provide civil litigants with the **broadest possible basis**, consistent with the Constitution of the United States, to seek relief against [any person or entity that] provided material support, **directly or indirectly**, to foreign organizations or persons that engage in terrorist activities against the United States." JASTA § 2(b), 130 Stat. at 853 (emphases added); *see Siegel* v. *HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 223 n.5 (2d Cir. 2019) (highlighting this language). To that end, JASTA expressly authorized civil claims based on theories of "secondary" liability — for conspiracy to violate the ATA and aiding and abetting violations of the ATA. JASTA § 4(a), 130 Stat. at 854 (codified at 18 U.S.C. § 2333(d)(2)). And to avoid the potential for uncertainty from subjecting defendants to divergent state law liability rules, JASTA made clear that courts analyzing conspiracy and aiding-and-abetting claims under the ATA were to follow *Halberstam* v. *Welch*, 705 F.2d 472 (D.C. Cir. 1983), in which Judges Wald, Bork, and Scalia carefully and comprehensively outlined the contours of such secondary civil liability. JASTA § 2(a)(5), 130 S. Ct. at 853.

Notwithstanding JASTA's (and *Halberstam*'s) clarity on these points, lower courts over the past three years have muddied the waters — yielding, in the district court's words in this case, "a decided trend toward disallowing ATA claims against defendants who did not deal directly with a terrorist organization or its proxy." *Freeman* v. *HSBC Holdings PLC*, 413 F. Supp. 3d 67, 73 n.2 (E.D.N.Y. 2019). Not only have these courts misapplied *Halberstam* (thereby flouting JASTA's plain text), but the trend has increasingly become its own justification for such skepticism. *Id.* ("It is this consistent trend . . . that informs the Court's decision not to adopt the well-considered recommendations of Judge Pollak's R&R and to dismiss this matter.").

The decision below is emblematic of this phenomenon. In rejecting Plaintiffs-Appellants' conspiracy and aiding-and-abetting claims against Defendants-Appellees, the district court required Plaintiffs-Appellants to plausibly allege a far more direct connection between Defendants-Appellees and the underlying acts of international terrorism than what *Halberstam* (and, thus, JASTA) requires. But because JASTA's plain language is unambiguous, the courts' "inquiry begins with the statutory text, and ends there as well." *Nat'l Ass'n of Mfrs.* v. *Dep't of Defense*, 138

S. Ct. 617, 631 (2018) (internal quotation marks omitted). Insofar as the district court failed to heed JASTA's plain text, its decision should be vacated and remanded — and this broader "trend" should be repudiated.

## ARGUMENT

### I. JASTA EXPRESSLY PROVIDES THAT ATA CLAIMS CAN BE PREDICATED ON THEORIES OF SECONDARY LIABILITY

To illustrate why lower-court rulings like the district court's decision in this case are so fundamentally inconsistent with JASTA, this Part introduces both JASTA itself and the statute it amended — the ATA. As the text and history of these statutes make clear, Congress knew exactly what it was doing in 2016 when it authorized secondary civil liability — on "the broadest possible basis" — against those who conspired in or aided and abetted certain acts of international terrorism. JASTA § 2(b), 130 Stat. at 853.

#### A. As Initially Enacted, the ATA Did Not Expressly Provide for Secondary Liability

First enacted in 1990,[2] the core of the current ATA has been on the books since 1992. *See* Federal Courts Administration Act of 1992, Pub. L.

2. The same language Congress enacted in 1992 was initially enacted as part of the Military Construction Appropriations Act, 1991, Pub. L. No. 101-519, § 132, 104 Stat. 2240, 2250 (1990), and known as the "Anti-

No. 102-572, § 1003(a)(4), 106 Stat. 4506, 4522 (codified as amended at 18 U.S.C. §§ 2331–2339D (2018)). As the House Judiciary Committee explained, the ATA was designed to provide "a new civil cause of action in Federal law for international terrorism that provides extraterritorial jurisdiction over terrorist acts abroad against United States nationals." H.R. REP. No. 102-1040, at 1 (1992). Congress had first provided for extraterritorial criminal jurisdiction over terrorist acts in 1986, and the ATA was designed to provide a complementary civil remedy for the victims of such acts. *See id.*

To that end, the ATA:

> would allow the law to catch up with contemporary reality by providing victims of terrorism with a remedy for a wrong that, by its nature, falls outside the usual jurisdictional categories of wrongs that national legal systems have traditionally addressed. By its provisions for compensatory damages, tremble [*sic*] damages, and **the imposition of liability at any point along the causal chain of terrorism**, it would interrupt, or at least imperil, the flow of money.

S. REP. No. 102-342, at 22 (1992) (emphasis added).

---

Terrorism Act of 1990." *Id.* But because of an enrolling error, it was repealed five months later — and then promptly reenacted. *See Almog* v. *Arab Bank*, *PLC*, 471 F. Supp. 2d 257, 265–66 (E.D.N.Y. 2007) (retracing this history).

As relevant here, the ATA added 18 U.S.C. § 2333(a), which provides that:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

The ATA further defines "international terrorism" as activities that meet three related but distinct requirements. First, they must "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State." 18 U.S.C. § 2331(1)(A). Second, they must "appear to be intended (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by assassination, or kidnapping." *Id.* § 2331(1)(B). Finally, they must "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the

persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum." *Id.* § 2331(1)(C).[3]

In enacting the ATA, Congress explained that its purpose was to close "gap[s] in our efforts to develop a comprehensive legal response to international terrorism," H.R. REP. No. 102-1040, *supra*, at 5, and to thereby impose liability "**at any point** along the causal chain of terrorism," S. REP. No. 102-342, *supra*, at 22 (emphasis added). Nevertheless, other than barring actions against the U.S. government, foreign governments, and agents or employees thereof, *see* 18 U.S.C. § 2337, the text of the ATA said nothing whatsoever about **who** could be held liable for violating the statute.

There is no question that the direct perpetrators of the qualifying acts of international terrorism would be proper defendants, but those individuals often (1) died in the attack; (2) could not be subject to personal jurisdiction in the United States even if they survived; or (3) were judgment-proof even if they could be subject to the jurisdiction of U.S. courts. Thus, one of the dominant questions the ATA raised — but did

---

3. This definition has only been amended once in three decades — to add "mass destruction" to § 2331(1)(B)(iii). USA PATRIOT Act of 2001, Pub. L. No. 107-56, § 802(a)(1), 115 Stat. 272, 376.

not answer — was whether any species of **secondary** liability would be available under the statute.

Perhaps the most important decision addressing that question is the en banc Seventh Circuit's ruling in *Boim* v. *Holy Land Foundation for Relief and Development* ("*Boim III*"), 549 F.3d 685 (7th Cir. 2008) (en banc). Writing for a majority of the court, Judge Posner held that "statutory silence on the subject of secondary liability means there is none; and section 2333(a) authorizes awards of damages to private parties but does not mention aiders and abettors or other secondary actors." *Id.* at 689 (citing *Cent. Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 200 (1994)). Quoting this exact analysis, this court reached a similar conclusion in *Rothstein* v. *UBS AG*, 708 F.3d 82, 97–98 (2d Cir. 2013). *But see Wultz* v. *Islamic Republic of Iran*, 755 F. Supp. 2d 1, 54–57 (D.D.C. 2010) (recognizing common-law aiding-and-abetting liability under the ATA, and citing other district courts that held the same).

The *Boim III* court did not end its analysis with its foreclosure of common-law secondary liability. Instead, as Judge Posner explained, the **primary** liability imposed by the ATA includes circumstances in which

the predicate federal criminal violation is nothing more than the provision of material support to terrorists or designated Foreign Terrorist Organizations (FTO) — which is, itself, a form of secondary liability. In his words, "[p]rimary liability in the form of material support to terrorism has the character of secondary liability. Through a chain of incorporations by reference, Congress has expressly imposed liability on a class of aiders and abettors." *Boim III*, 549 F.3d at 691–92. This reasoning, which has been described as "statutory secondary liability," *see* STEPHEN DYCUS ET AL., COUNTERTERRORISM LAW 937 (3d ed. 2016), reflected an overt, if awkward, compromise — between the common-law secondary liability that Congress seems to have intended, *see id.* at 705–19 (Rovner, J., concurring in part and dissenting in part), and the silence of the statute on that specific point. *See Rothstein*, 708 F.3d at 97–98. Under *Boim III*, proceeding against a defendant other than the perpetrator of the underlying act of international terrorism requires demonstrating not only that the defendant aided or abetted (or conspired to commit) an act of international terrorism; it also requires showing that the defendant's **primary** conduct meets the definition of "international terrorism" in § 2331(1).

*Boim III* is thus significant in two respects. First, it underscores the debate over the availability of secondary liability under the ATA prior to JASTA. Second, it provides a baseline against which to compare the post-JASTA ATA, as well.

### B. JASTA Expressly Provided That Secondary Liability is Available Under the ATA, and Expressly Articulated the Standards Governing Such Claims

Following *Boim III*, this court rejected common-law secondary liability under the original ATA in *Rothstein*, albeit without taking a position on Judge Posner's theory of "statutory secondary liability." *See* 708 F.3d at 98. But as Judge Kearse presciently noted, "[i]t of course remains within the prerogative of Congress to create civil liability on an aiding-and-abetting basis." *Id.*

Enter, JASTA. Enacted over President Obama's veto, JASTA garnered headlines primarily for its amendments to the Foreign Sovereign Immunities Act (FSIA) — which, in response to decisions from this court and the U.S. District Court for the Southern District of New York, were ostensibly intended to make it easier for victims of the September 11 attacks and their families to sue Saudi Arabia over its alleged role in providing financial support for the attacks. *See* Steve

Vladeck, *The 9/11 Civil Litigation and the Justice Against Sponsors of Terrorism Act (JASTA)*, JUST SECURITY, Apr. 18, 2016, https://www.justsecurity.org/30633/911-civil-litigation-justice-sponsors-terrorism-act-jasta/. Indeed, President Obama's veto message focused entirely on that aspect of JASTA. Veto Message from the President — S. 2040, Sept. 23, 2016, https://obamawhitehouse.archives.gov/the-press-office/2016/09/23/veto-message-president-s2040.

Far more quietly (and far less controversially), JASTA also amended the ATA. As Congress explained in the text of the statute, "[i]t is necessary to recognize the substantive causes of action for aiding and abetting and conspiracy liability under chapter 113B of title 18, United States Code." JASTA § 2(a)(4), 130 Stat. at 852 (codified at 18 U.S.C. § 2333 note).[4] Thus, JASTA sought to make explicit that the ATA provides a civil damages remedy against "persons or entities" "that knowingly or recklessly contribute material support or resources, **directly or indirectly**, to persons or organizations that pose a significant risk of committing acts of terrorism that threaten the security of nationals of the United States or the national security, foreign policy,

4. Chapter 113B is the ATA. *See* 18 U.S.C. §§ 2331–2339D (2018).

or economy of the United States." *Id.* § 2(a)(6) (emphasis added). Indeed, Congress could hardly have been clearer as to its purpose:

> The purpose of this Act is to provide civil litigants with **the broadest possible basis**, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, **that have provided material support, directly or indirectly**, to foreign organizations or persons that engage in terrorist activities against the United States.

*Id.* § 2(b), 130 Stat. at 853 (emphases added). To that end, JASTA created 18 U.S.C. § 2333(d)(2):

> In an action under [§ 2333(a)] for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as [an FTO] as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to **any person who aids and abets**, by knowingly providing substantial assistance, **or who conspires with the person who committed such an act of international terrorism**.

*Id.* § 4(a), 130 Stat. at 854 (emphases added).

Congress went even further, and expressly identified the standards it intended courts to apply in considering secondary liability claims under the ATA. As the statute provided, the D.C. Circuit's decision in *Halberstam*, "which has been widely recognized as the leading case regarding Federal civil aiding and abetting and conspiracy liability,

. . . provides the proper legal framework for how such liability should function in the context of [the ATA].” *Id.* § 2(a)(5), 130 Stat. at 852. Finally, JASTA provided that its amendments to the FSIA and the ATA applied to any civil action arising out of injuries on or after September 11, 2001 that was pending as of, or commenced after, its date of enactment — September 28, 2016. *Id.* § 7, 130 Stat. at 855.

Congress therefore (1) expressly authorized ATA claims based upon conspiracy and aiding-and-abetting liability; (2) expressly identified the standards courts should apply in reviewing ATA conspiracy and aiding-and-abetting claims; (3) emphasized that its purpose was to “to provide civil litigants with the broadest possible basis to seek relief against [those] that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States”; and (4) made those amendments applicable retroactively to any claim arising on or after September 11, 2001.[5]

---

5. JASTA was one of three different statutes in a five-year period in which Congress expressly broadened liability under the ATA. In 2013, Congress expanded the statute of limitations for ATA claims from four years to 10 years. National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(a), 126 Stat. 1632, 2017 (codified at 18 U.S.C. § 2335). And in the Anti-Terrorism Clarification Act of 2018, Pub. L. No. 115-253, 132 Stat. 3183, Congress (1) clarified that the exemption

## II. Lower Courts Have Responded to JASTA By Imposing Indefensibly High Burdens on Plaintiffs to Allege Secondary Liability Claims Under the ATA

JASTA expressly authorized aiding-and-abetting and conspiracy liability under the ATA, and it did so with the express purpose of creating the "broadest possible basis" for liability against *any* party that provides even "indirect[]" material support to those engaging in terrorist activities against the United States. Notwithstanding these unambiguous provisos, courts over the past three years have adopted a series of narrow interpretations of JASTA that are irreconcilable with *Halberstam* — and, thus, with JASTA's plain and unambiguous text.

### A. Courts Have Required Plaintiffs Raising Civil Conspiracy Claims Under the ATA to Allege Far More Than *Halberstam* Requires

For instance, in *O'Sullivan* v. *Deutsche Bank AG*, No. 17 CV 8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019), the plaintiffs alleged that Deutsche Bank and several other transnational financial institutions had conspired to provide "financial services to the government of Iran and its

---

from the ATA for "acts of war" did not extend to acts by designated FTOs; (2) expanded the class of blocked assets that could be used to satisfy successful ATA judgments; and (3) recognized certain conduct as constituting consent to personal jurisdiction in ATA cases. *Id.* §§ 2–4, 132 Stat. at 3183–85 (codified at 18 U.S.C. §§ 2331, 2333, 2334).

'Agents and Proxies' in violation of U.S. sanctions," and thereby "helped Iran fund and support the terrorist organizations that carried out the attacks that injured Plaintiffs." *Id.* at *1 (footnote omitted).

In particular, the plaintiffs alleged that the object of the conspiracy "was to 'defeat the economic sanctions imposed by the U.S. government,' and to provide material support to Iran and its Agents and Proxies in violation of U.S. sanctions." To that end, the plaintiffs alleged that the banks' "aims and objectives were allegedly to 'profit by keeping U.S. depository institutions, law enforcement, and counter-terrorism agencies blind to Iran's and/or its Agents' and Proxies' movement of USD through the U.S. and international financial systems.'" *Id.* at *4.

Judge Swain held that these allegations were insufficient to state a civil conspiracy claim under the ATA. In her words, "to be subject to secondary liability under JASTA on the basis of a conspiracy, a defendant must have conspired **to commit an act of international terrorism**." *Id.* at *9 (emphasis added). So construed, *O'Sullivan* held that "[p]laintiffs' allegations are insufficient to state a claim for JASTA conspiracy liability because [the banks'] alleged provision of material support to Iranian entities is so far removed from the acts of terrorism

that injured Plaintiffs that the Court cannot infer that Defendants shared the common goal of committing an act of international terrorism." *Id. see also Kaplan* v. *Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 534 (S.D.N.Y. 2019) ("Plaintiffs must allege that Defendant and Hizbollah entered into an agreement to commit an act of international terrorism, and that Plaintiffs were injured by an unlawful overt act performed by Defendant or Hizbollah pursuant to this agreement."); *Taamneh* v. *Twitter, Inc.*, 343 F. Supp. 3d 904, 916 (N.D. Cal. 2018) (similar); *cf. Kemper* v. *Deutsche Bank AG*, 911 F.3d 383 (7th Cir. 2018) (taking a similar approach to a conspiracy claim under § 2333(a)).

A comparison to *Halberstam* helps to illustrate why this approach to conspiracy liability is unfaithful to JASTA. In *Halberstam*, the D.C. Circuit held that Linda Hamilton was liable for civil conspiracy in Bernard Welch's murder of Dr. Michael Halberstam — even though she neither planned nor knew about the murder — because she had agreed with Welch to undertake an illegal enterprise to acquire stolen property, and the murder was an overt act in furtherance of that conspiracy. As the D.C. Circuit explained, "a conspirator can be liable even if he neither planned nor knew about the particular overt act that caused injury, so

long as the purpose of the act was to advance the overall object of the conspiracy." *Halberstam*, 705 F.2d at 487; *see also id.* ("In sum, the district court's findings that Hamilton agreed to participate in an unlawful course of action and that Welch's murder of Halberstam was a reasonably foreseeable consequence of the scheme are a sufficient basis for imposing tort liability on Hamilton according to the law on civil conspiracy.").

Applying that standard to JASTA, a third party can be liable for civil conspiracy under the ATA even if it neither planned nor knew about the specific acts of international terrorism at issue, so long as it "agreed to participate in **a** tortious line of conduct," *id.* at 478 (emphasis added), and the acts of international terrorism were a "reasonably foreseeable consequence of [that] scheme." *See id.* at 477; *see also Freeman* v. *HSBC Holdings PLC*, No. 14 CV 6601, 2018 WL 3616845, at *25–26 (E.D.N.Y. July 27, 2018), *report and recommendation rejected*, 413 F. Supp. 3d 67. Under reasoning like the district court's in *O'Sullivan*, in contrast, plaintiffs must plausibly allege that the defendants **intended** for their misconduct to help fund acts of international terrorism, as opposed to merely **knowing** that it would do so — that the defendants specifically

intended to commit an act of international terrorism through the underlying conspiracy, rather than participated in a criminal conspiracy that foreseeably **resulted** in an act of international terrorism. Clearly, that is a far higher bar than *Halberstam* — and, thus, JASTA — imposes.

### B. Courts Have Required Plaintiffs Raising Aiding-and-Abetting Claims Under the ATA to Allege Far More Than *Halberstam* Requires

District courts have taken a comparably narrow approach to aiding-and-abetting liability under JASTA. For instance, in denying leave to amend the complaint in *O'Sullivan*, Judge Swain held that "allegations that Defendants knowingly violated laws that were designed principally to prevent terrorist activity do not allege plausibly a general awareness that Defendants had assumed a role in a foreign terrorist organization's **act** of international terrorism." 2020 WL 906153, at *6. Thus, *O'Sullivan* required that a defendant be generally aware of its role in the actual terrorist attack — as opposed to its role in supporting criminal activities, including terrorism, more generally.

Again, *Halberstam*'s discussion of aiding-and-abetting liability demonstrates the flaws in this interpretation of JASTA. In *Halberstam*, the D.C. Circuit held that Hamilton was liable for aiding-and-abetting

Halberstam's murder not because she was generally aware that Welch intended to murder Halberstam, but because she "had a general awareness of her role in a continuing criminal enterprise." 705 F.2d at 488; *see also BCS Servs., Inc.* v. *Heartwood 88, LLC*, 637 F.3d 750, 758 (7th Cir. 2011) (Posner, J.) ("Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation."). Indeed, had Hamilton been aware that Welch intended to murder Halberstam and facilitated the burglary anyway, she could presumably have been sued — and charged — as a principal.[6]

The court in *Halberstam* further held that Hamilton had provided "substantial assistance" to Welch because, even though she was not

---

6. In *Linde* v. *Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018), this court suggested that, to be liable for aiding and abetting under the ATA, a defendant must have general awareness of its role in "terrorist activities," specifically. *Linde* cited only *Halberstam* for this proposition — which, as this discussion makes clear, requires no such specificity. *Id.* (citing *Halberstam*, 705 F.2d at 477); *see Siegel*, 933 F.3d at 224 (applying the *Halberstam* standard for aiding-and-abetting liability). It is therefore implausible to read *Linde* as these lower courts implicitly have — as deliberately **narrowing** the *Halberstam* standard. To the contrary, this court's two sustained discussions of JASTA, in *Linde* and *Siegel*, both repeatedly and correctly grounded their analyses in *Halberstam*.

present at the time of the murder (or of any individual burglary), she was heavily involved in part of the "business" — quickly disposing of the burgled goods without suspicion — on which "the success of the tortious enterprise" rested. *Id.* As Judge Wald wrote for the panel:

> It was not necessary that Hamilton knew specifically that Welch was committing burglaries. Rather, when she assisted him, it was enough that she knew he was involved in some type of personal property crime at night — whether as a fence, burglar, or armed robber made no difference — because violence and killing is a foreseeable risk in any of these enterprises.

*Id.*

As in *Halberstam*, for a party alleged to have aided and abetted an act of international terrorism under the ATA, "violence and killing is a foreseeable risk" of the enterprise. *Id.* And as in *Halberstam*, a party can aid and abet such an act even if its role is a purely bureaucratic one — financial machinations on which "the success of the tortious enterprise" rested. *Id.* By *Halberstam*'s logic, then, a third party aids and abets a violation of the ATA if they are generally aware of the nature of the criminal activities that their conduct is facilitating, and if they provide substantial assistance to the criminal **enterprise** from which acts of

international terrorism result — not to the specific acts of international terrorism themselves.

### C. These Narrow Interpretations of JASTA Cannot Be Reconciled with Its Plain Text or Congress's Unambiguous Purpose

The rulings discussed above, and others, have had the effect of converting the "broadest possible basis" for secondary liability that Congress intended to confer under JASTA into requirements that secondary actors have effectively committed **primary** violations of criminal counterterrorism laws — of holding plaintiffs to a standard that is even more demanding than the already narrow "statutory secondary liability" that the Seventh Circuit recognized in *Boim III*.

Moreover, these decisions are invariably coming at the motion-to-dismiss stage of these cases, on the ground that plaintiffs' complaints have failed to plausibly allege facts that, if proven, would establish the defendants' liability. In other words, district courts are adopting these interpretations of JASTA notwithstanding plausible allegations that more than adequately state claims for secondary liability under *Halberstam*, so that JASTA claims are foreclosed even if every single one of the plaintiffs' allegations is, in fact, true.

In some cases, courts' skepticism of JASTA has been all-but overt. For instance, in this case, Judge Chen justified adopting an *O'Sullivan*-like approach to conspiracy liability under JASTA (and rejecting the magistrate judge's exhaustive R&R) by dismissing what she described as "Congress's **apparent** intent" in enacting that statute. 413 F. Supp. 3d at 98 n.41 (emphasis added); *see also id.* at 94 n.35 ("[A]lthough Congress enacted JASTA to provide 'the broadest possible basis [for civil litigants] . . . to seek relief against persons, entities, and foreign countries' that have provided direct or indirect material support to terrorism, the Act's amendments **themselves** do not alter the applicable causation standard." (emphasis added; second alteration in original)). But Congress's intent in JASTA was not "apparent"; it was expressly and unambiguously stated on the face of the statute. *See* JASTA § 2, 130 Stat. at 852–53. This is therefore not an instance in which there is tension between the statute's purposes and its text, *see, e.g.*, *Kloeckner* v. *Solis*, 568 U.S. 41, 55 n.4 (2012); it is, instead, an instance in which the statute's text makes its purposes inescapably plain.

As the Supreme Court reiterated just last Term, "[i]n statutory interpretation disputes, a court's proper starting point lies in a careful

examination of the ordinary meaning and structure of the law itself. Where, as here, that examination yields a clear answer, judges must stop." *Food Mktg. Inst.* v. *Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (citing *Schindler Elev. Corp.* v. *United States ex rel. Kirk*, 563 U.S. 401, 407 (2011)); *see also Ross* v. *Blake*, 136 S. Ct. 1850, 1856 (2016) ("Statutory interpretation, as we always say, begins with the text.").

Here, JASTA's text and structure provide clear answers as to the contours of secondary liability that Congress intended to authorize under the ATA. Courts may not **agree** that *Halberstam* provides the best approach to civil conspiracy and aiding-and-abetting liability, but given JASTA's plain text, there can be no question as to whether it provides the governing standards for assessing civil conspiracy and aiding-and-abetting liability under the ATA — it does. *See Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 631 ("Because the plain language of [the statute] is 'unambiguous,' 'our inquiry begins with the statutory text, and ends there as well.'" (quoting *BedRoc Ltd., LLC* v. *United States*, 541 U.S. 176, 183 (2004) (plurality opinion)); *see also Bank Markazi* v. *Peterson*, 136 S. Ct. 1310, 1328 (2016) ("[A]n exercise of congressional authority regarding

foreign affairs [is] a domain in which the controlling role of the political branches is both necessary and proper.").

Insofar as courts have not followed *Halberstam* in their decisions cabining secondary liability under the ATA, they are therefore engaging in the very "casual disregard of the rules of statutory interpretation" that the Supreme Court has repeatedly dismissed as a "relic from a bygone era of statutory construction." *Food Mktg. Inst.*, 139 S. Ct. at 2364 (internal quotation marks omitted).

## III. THE DISTRICT COURT'S ANALYSIS OF SECONDARY LIABILITY UNDER THE ATA SHOULD BE VACATED AND REMANDED

In Part II.D of its September 2019 opinion in this case, the district court rejected Defendants-Appellees' secondary liability to Plaintiffs-Appellants under the ATA. *See Freeman*, 413 F. Supp. 3d at 95–99. With respect to both Plaintiffs-Appellants' conspiracy claims and their aiding-and-abetting claims, the district court's analysis was not faithful to *Halberstam* — and should be vacated and remanded for application of the proper framework.

Taking conspiracy first, Judge Chen held that "§ 2333(d)'s expansive definition of the 'person' who commits an act of international terrorism does not relieve Plaintiffs of their duty to allege that a

defendant **directly conspired** with that 'person.'" *Id.* at 97 (emphasis added). And as she explained, "there is not a single allegation in the SAC that any of the Defendants directly conspired with Hezbollah or the IRGC. And there are no allegations that any of Defendants' alleged co-conspirators, *e.g.*, the Iranian banks, IRISL, NIOC, or Mahan Air, directly participated in the attacks that injured Plaintiffs." *Id.* at 98; *see also id.* ("These omissions are fatal."). For Judge Chen, in other words, JASTA **itself** required plausible allegations of a direct relationship between the perpetrators of the underlying acts of international terrorism and those who could be held secondarily liable for such acts.

But in *Halberstam*, the D.C. Circuit did not require the plaintiff to demonstrate that Hamilton "directly" conspired with Welch to commit Halberstam's **murder**; it required proof only that Hamilton generally conspired with Welch to commit **some** crime, and that murder was a reasonably foreseeable consequence thereof. And even though, in *Halberstam*, Hamilton **did** know — and "directly" conspired with — Welch, it is black-letter law that two defendants can conspire with each other even if neither is aware of the other's identity. *See Rogers* v. *United States*, 340 U.S. 367, 375 (1951); *see also United States* v. *Medina*, 32 F.3d

40, 44 (2d Cir. 1994). Thus, when JASTA provides that "liability may be asserted as to any person . . . who conspires with the person who committed such an act of international terrorism," 18 U.S.C. § 2333(d)(2), it clearly incorporated general principles of conspiracy law — and not the novel, "directly" conspired requirement Judge Chen held to be compelled by its "plain text." *Freeman*, 413 F. Supp. 2d at 98 n.41. Indeed, as noted above, JASTA's text expressly **eschews** such a requirement. *See* JASTA § 2(b), 130 Stat. at 853 (noting that JASTA's purpose is to impose liability upon those who support acts of international terrorism, whether "directly **or indirectly**" (emphasis added)).

An analogous flaw infects Judge Chen's (cursory) analysis of Plaintiffs-Appellants' aiding-and-abetting claims. Relying on this court's decision in *Rothstein*, Judge Chen held that Plaintiffs-Appellants failed to satisfy the requirements for proximate causation under 18 U.S.C. § 2333(a), *id.* at 94, never mind that JASTA deliberately relaxed that requirement. In the district court's words, "even if JASTA could be viewed as superseding the causation principles applied in *Rothstein* . . . because Plaintiffs have pled their material support conspiracy claims as primary liability claims under § 2333(a) (as well as

§ 2333(d)(2) claims), any pre-JASTA case law would apply to those claims." *Id.* at 94 n.35. In other words, Judge Chen applied case law based on what plaintiffs must show to establish **primary** liability under the ATA in dismissing Plaintiffs-Appellants' claims for **secondary** aiding-and-abetting liability — claims Congress made clear should be subject to a different analysis. *But see id.* ("Congress's invocation of *Halberstam* as the governing causation standard does not alter the causation analysis in this case.").

*Amici* therefore believe that Plaintiffs-Appellants probably **have** plausibly alleged claims for civil conspiracy and aiding-and-abetting under the ATA. But because the district court applied the incorrect standard, the appropriate disposition should be to vacate the decision below (at least with respect to the dismissal of Plaintiffs-Appellants' secondary liability claims) and remand for further proceedings.

But even if this court disagrees, and concludes that Plaintiffs-Appellants' allegations are insufficient even under a proper application of the *Halberstam* tests, it is incumbent for the court to clarify that it is **those** standards — and not the analyses supplied by the district court — that govern claims for secondary liability under the ATA. Otherwise, the

"trend" Judge Chen identified (and perpetuated) below will likely continue, with the result being to close courthouse doors to tort claims for which Congress has repeatedly and expressly sought to provide a meaningful federal remedy.

*   *   *

Allowing ATA claims based upon the modes of liability that *Halberstam* contemplated would hardly open the floodgates, even as applied to acts of international terrorism outside the United States.[7] Plaintiffs still must plausibly allege that defendants knowingly participated in a criminal enterprise — that the defendants had unclean hands — and that acts of international terrorism were a foreseeable result of those misdeeds. That is a meaningfully high bar. But even if this court would prefer to set the bar even higher:

> [t]his Court's interpretive function requires it to identify and give effect to the best reading of the words in the provision at issue. Even if the proper interpretation of a statute upholds a "very bad policy," it "is not within our province to second-guess" the "wisdom of Congress' action" by picking and choosing our preferred interpretation from among a range of

7. Unlike in *RJR Nabisco* v. *European Cmty.*, 136 S. Ct. 2090 (2016), which held that RICO's private cause of action did not reach injuries suffered outside the United States, JASTA *expressly* authorizes a private cause of action for extraterritorial misconduct. 18 U.S.C. § 2331(1)(C).

> potentially plausible, but likely inaccurate, interpretations of a statute.

*Harbison* v. *Bell*, 556 U.S. 180, 197 (2009) (Thomas, J., concurring in the judgment) (quoting *Eldred* v. *Ashcroft*, 537 U.S. 186, 222 (2003)). The plain language of JASTA is clear. So, too, is the obligation of courts to follow it.

## CONCLUSION

For these reasons, *amici* respectfully submit that the district court's dismissal of Plaintiffs-Appellants' claims for secondary liability should be vacated and remanded.

Respectfully submitted,

Stephen I. Vladeck
727 East Dean Keeton Street
Austin, TX 78705
(512) 475-9198
svladeck@law.utexas.edu

*Counsel for* Amici Curiae

March 16, 2020

## APPENDIX

## List of *Amici Curiae**

**JANET COOPER ALEXANDER**
Frederick I. Richman Professor of Law, Emerita
Stanford Law School

**WILLIAM D. ARAIZA**
Professor of Law
Brooklyn Law School

**WILLIAM C. BANKS**
College of Law Board of Advisors Distinguished Professor
Professor of Law and
Professor of Public Administration and International Affairs
Emeritus
Syracuse University College of Law
Maxwell School of Citizenship & Public Affairs

**ERWIN CHEMERINSKY**
Dean and Jesse H. Choper Distinguished Professor of Law
University of California, Berkeley School of Law

**BROOKE D. COLEMAN**
Professor of Law and
Associate Dean of Research and Faculty Development
Seattle University School of Law

**GEOFFREY S. CORN**
Professor of Law and Presidential Research Professor
South Texas College of Law Houston

*. Institutional affiliations are provided for identification purposes only.

**List of *Amici Curiae* (cont'd)**

**WILLIAM V. DUNLAP**
Professor of Law
Quinnipiac University School of Law

**STEPHEN DYCUS**
Professor of Law
Vermont Law School

**BRENNER M. FISSELL**
Associate Professor of Law
Hofstra University Maurice A. Deane School of Law

**JIMMY GURULÉ**
Professor of Law
Notre Dame Law School

**MICHAEL J. KELLY**
Professor, School of Law
Senator Allen A. Sekt Endowed Chair in Law
Creighton University

**LEE KOVARSKY**
Professor of Law
University of Maryland Francis King Carey School of Law

**PETER MARGULIES**
Professor of Law
Roger Williams University School of Law

**ANDREW SIEGEL**
Associate Dean for Academic Affairs and Professor of Law
Seattle University School of Law

**List of *Amici Curiae* (cont'd)**

**ADAM STEINMAN**
University Research Professor of Law
University of Alabama School of Law

**RACHEL E. VANLANDINGHAM**
Professor of Law
Southwestern Law School

**HOWARD M. WASSERMAN**
Associate Dean for Research and Faculty Development and Professor of Law
Florida International University College of Law

**LOUISE WEINBERG**
William B. Bates Chair for the Administration of Justice
University of Texas School of Law

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure Rule 32(a)(7)(B), and Second Circuit Local Rules 28.1.1(a), 29.1, and 32.1(a)(4)(A), I hereby certify that this brief contains 5934 words, as calculated by the word count function in Microsoft Word, and excluding the items that may be excluded under Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This brief uses a proportionally spaced typeface, Century Schoolbook, with 14-point typeface, in compliance with Federal Rules of Appellate Procedure 32(a)(5)(A) and 32(a)(6).

Stephen I. Vladeck
Counsel for *Amici Curiae*

March 16, 2020

## **<u>Certificate of Service</u>**

I hereby certify that on this 16th day of March, 2020, a true and correct copy of the foregoing Brief of Law Professors as *Amici* Curiae in Support of Plaintiffs-Appellants was served on all counsel of record in this appeal via CM/Dkt., pursuant to Second Circuit Local Rule 25.1(h)(1) and (2). I further certify that, consistent with Local Rule 31.1, six hard copies of this brief will be filed with the court forthwith.

Stephen I. Vladeck
Counsel for *Amici Curiae*

March 16, 2020